Charles P. Maher, State Bar No. 124748
RINCON LAW, LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-840-4199
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for Marlene G. Weinstein,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

ZANOON INC.
    *dba* Crepevine/Cascabel,

    Debtor.

Case No. 25-30519 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

[No Hearing Required Unless Requested]

**DECLARATION OF MARLENE G. WEINSTEIN IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING
<u>COMPROMISE OF CLAIMS AND SALE OF ASSETS</u>**

I, Marlene G. Weinstein, declare as follows:

1.    I am serving as Chapter 7 Trustee of the estate of the above Debtor which filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 1, 2025.

2.    The Debtor's primary asset appeared to be a Type-47 liquor license, which the Debtor valued at $75,000. Its other assets consisted of food and liquor inventory, furniture, fixtures and equipment, all of which was subject to a first priority lien in favor of the United States Small Business Administration in the amount of $147,000, according to the Debtor's Schedule D. None of the tangible personal property had meaningful realizable value.

3.    I became aware shortly after my appointment that the Debtor's two shareholders, Maher Fakhouri and Tareq Fakhouri, had been engaged in litigation in Marin County Superior Court. My counsel and I reviewed complaints and cross-complaints and noted that, among the

Case: 25-30519   Doc# 38-1   Filed: 07/27/26   Entered: 07/27/26 09:17:54   Page 1 of 3

1

claims asserted by one against the other, were claims for general damage to the Debtor's financial condition. My counsel informed counsel for Maher Fakhouri and counsel for Tareq Fakhouri that claims for general damage were derivative claims of the Debtor and were solely owned by the bankruptcy estate and could not be prosecuted by one shareholder against the other for the shareholder's sole benefit.

4. I consulted a liquor license broker regarding marketing and sale of the license. The broker gave me a rough range of value consistent with the $75,000 value placed on the license by the Debtor.

5. Tareq Fakhouri is the owner of the entity that owns the building in which the Debtor operated. Tareq expressed interest in purchasing the license. I was inclined to accept the offer, which was at a price higher than I expected based on my communications with the liquor license broker.

6. Subsequently, Tareq Fakhouri's attorneys approached my attorney with a proposal to purchase the liquor license and to purchase the claims the estate had against him and claims against Maher Fakhouri and others. I entered into negotiations which produced the settlement and sale described in my notice of compromise and sale of claims.

7. Under the terms of the agreement, Tareq Fakhouri will purchase the estate's liquor license for $100,000 and will purchase for $50,000 the claims owned by the estate against Maher Fakhouri and other parties identified in the notice. These claims include claims the estate has or might have against Tareq Fakhouri personally.

8. The liquor license is unencumbered except for what I expect to be relatively modest holds from state and local tax agencies. The claims between Tareq and Maher and others are general intangibles that are subject to the lien in favor of the Small Business Administration. The $50,000 paid for those claims will be turned over to the Small Business Administration in partial satisfaction of its claim in the case.

9. I am proposing the transaction as a private sale, not as a sale of assets that is subject to overbid. The liquor license and the claims are being sold as a package, not to be separated. If a party intends to object to the compromise and sale, it is my expectation that the party will accompany its objection with an overbid that is at least 10 percent higher than Tareq Fakhouri's bid. No other

party has expressed interest in purchasing the affirmative claims owned by the estate against various insider parties.

10.    Based on what I have learned about the Debtor and the relations between Tareq Fakhouri and Maher Fakhouri, and my review of documents, I expect that oral testimony of Maher Fakhouri and Tareq Fakhouri and other witnesses will be the basis for the Superior Court's decision. I concluded that the expense of pursuing claims against each of these individuals and others was not in the best interest of the estate, based primarily on the expense of litigation, the uncertainty of success and collection, and delay in the administration of the case.

11.    In the exercise of my business judgment, I have entered into the transaction and request that the Court approve the compromise and sale as described in the notice.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 27th day of July 2026 in Hercules, California.

*/s/Marlene G. Weinstein*
Marlene G. Weinstein